# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 52397 & 52398

| | | |
|---|---|---|
| In the Matter of: Jane Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) | **Filed:  August 27, 2025** |
| | ) | **Melanie Gagnepain, Clerk** |
| Petitioner-Respondent, | ) ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| v. | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| JANE DOE (2024-46), | ) ) | |
| Respondent-Appellant. | ) ) | |
| In the Matter of: John Doe I, A Child Under Eighteen (18) Years of Age. | ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) ) | |
| Petitioner-Respondent, | ) ) | |
| v. | ) ) | |
| JANE DOE (2024-47), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County.  Hon. Courtnie R. Tucker, Magistrate.

Judgments terminating parental rights, <u>affirmed</u>.

Nielson Law PLLC; Jeffrey Nielson, Caldwell, for appellant.

Hon. Raúl R. Labrador, Attorney General; Christopher G. Sletvold, Deputy Attorney General, Caldwell, for respondent.

---

TRIBE, Judge

Jane Doe (2024-46/2024-47) appeals from the judgments terminating her parental rights.[1] We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of the minor children, B.H. and E.H. At the time of her birth in June 2021, B.H. tested positive for opioids. B.H. was then removed from Doe's custody and placed in the physical custody of the Idaho Department of Health and Welfare (Department). The magistrate court vested legal custody of B.H. in the Department. The Department created a safety plan for E.H as he also tested positive for controlled substances. E.H. resided in a relative's home, who was to act as a safety monitor over the child. After a shelter care hearing, the magistrate court found that it is in the best interests of B.H. to remain in the legal custody of the Department pending the adjudicatory hearing but should be granted an extended home visit in the same relative's home as E.H.

During the pendency of the cases, a search warrant was executed on the relative's home where drugs and paraphernalia were found. The relative was charged with possession of marijuana. Further, the Department learned that Doe was residing in the same home as the children, contrary to a condition of the safety plan at the time. E.H. was removed from the home and was placed into the custody of the Department. Doe did not complete the case plan and did not reunify with the children. The primary permanency goal of the case plan was changed to termination of parental rights. The Department petitioned to terminate Doe's parental rights to both B.H. and E.H. and a termination trial was held regarding both children. At the time of trial, B.H. had been in the Department's legal custody for three years and E.H. had been in the Department's legal custody for twenty months. The magistrate court terminated Doe's rights after finding that Doe had neglected the children and that termination is in the best interests of the children. Doe appeals.

---

[1]    The magistrate court held one termination trial and entered one findings of fact and conclusions of law for both children. However, the magistrate court entered a separate judgment for each child in their respective cases; therefore, there are two judgments terminating parental rights. For these reasons, the cases have been consolidated on appeal.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

The State argues that, in her briefs, Doe improperly joined the appeals for B.H. and E.H. However, because the magistrate court held the termination hearings simultaneously and entered one findings of fact and conclusions of law, the appeals have been properly consolidated. Further, Doe's briefs properly cite only to the record and transcript that were made in the respective case. We will first discuss the issues that pertain to the children collectively, followed by a discussion of the issues that pertain to E.H. only.

Doe argues that the magistrate court did not have substantial and competent evidence to support several factual findings to support its conclusion that Doe neglected B.H. and E.H. Additionally, Doe argues that the magistrate court did not have substantial and competent evidence to support the finding that it is in the best interests of the children to terminate Doe's parental rights. While Doe challenges that several of the magistrate court's findings were made without substantial and competent evidence, Doe's arguments seek to have this Court reweigh the evidence presented at trial. This Court's review, however, is limited to whether substantial and competent evidence supports the magistrate court's decision. *See, e.g.*, *Doe*, 148 Idaho at 245-46, 220 P.3d

at 1064-65 (noting review is whether substantial and competent evidence supports decision). This Court will not reweigh the evidence. *Idaho Dep't of Health & Welfare v. Doe (2017-5)*, 162 Idaho 400, 407, 397 P.3d 1159, 1166 (Ct. App. 2017). While most of Doe's arguments are supported by citations to the transcript, she fails to consider the transcript as a whole and, rather, effectively asks this Court to identify the cited portions as more persuasive than any other portion.

## A. B.H and E.H.

### 1. Neglect

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

First, Doe argues that the magistrate court erred in finding that she did not comply with the case plan or demonstrate the ability to safely parent her children. Doe argues that the Department

failed to make reasonable efforts to facilitate the completion of the case plan. "It is well-settled that the Department's efforts at reunification are not relevant to the magistrate court's termination decision under I.C. § 16-2005." *Idaho Dep't of Health & Welfare v. Doe (2019-31)*, 166 Idaho 357, 361, 458 P.3d 226, 230 (Ct. App. 2020). Thus, Doe's arguments--that the Department assigned several people to act as case managers, which made it difficult to communicate effectively, and that there were times when the case managers did not respond to Doe or the case managers would only respond to Doe days or "weeks later"--are not relevant to her claim that the magistrate court erred in terminating her parental rights. For the same reason, Doe's mother's testimony--that Doe experienced difficulty with communicating with the case managers--is similarly irrelevant. Additionally, in contrast to Doe's testimony, one of the case managers testified that Doe failed to contact the case manager upon Doe's release from incarceration to discuss the case plan. Doe also testified that she relapsed, which occurred approximately forty-five days prior to trial, and interfered with her ability to complete tasks in her case plan. Finally, the most recent case manager testified that, when she tried to set up appointments after Doe's release from incarceration, she would cancel or not show up to the appointments. The case manager also testified that Doe missed drug testing without an explanation. Nonetheless, Doe has failed to demonstrate that the Department's efforts or lack thereof excuse her failure to comply with the case plan or demonstrate the ability to safely parent her children.[2]

Next, Doe argues that the magistrate court erred in finding that she never stabilized during the time that her children were in the custody of the Department. Doe argues that she stabilized while she lived in her parents' home. However, the magistrate court also heard testimony that Doe did not have steady employment, had not completed drug treatment, relapsed, and was incarcerated during large portions of the life of the cases. Doe testified that throughout the life of the cases she was "struggling with [her] addiction." While Doe testified that she was "in the process of kind of

---

[2]     The parties dispute whether Doe adequately raised an impossibility defense either in the magistrate court or in her opening brief on appeal. Impossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan. *Idaho Dep't of Health & Welfare v. Doe (2026-14)*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016). We agree that Doe has not properly raised the impossibility defense but, nonetheless, has failed to show that either the lack of reunification efforts by the Department or her periods of incarceration made compliance with the case plan impossible.

getting into [her] own place per se" by getting an RV, Doe fails to identify any steps she has taken to show that this has or would come to fruition. An intent or wish to move into an RV does not contradict the finding of the magistrate court.

Next, Doe argues that the magistrate court erred in finding that she had not addressed her substance abuse issues, continued to use controlled substances, and had incurred several new legal charges. Doe testified that she was enrolled in outpatient treatment and was "supposed to start [that] next week." Doe also testified that she noticed her anxiety had increased and she did not realize how bad she "suffered with depression until recently" and that she was "seeing a psychiatrist." However, the case worker also testified that Doe was discharged from an addiction treatment facility for failing to attend treatment. While Doe may have had plans to begin treatment in the future, this does not serve to counter the magistrate court's finding that, up until the termination trial, Doe did not address her substance abuse issues.

At trial, Doe acknowledged that she had been incarcerated for about a third of the case. Further, Doe testified that, within a week of trial, she "had to go in for [forty-eight] hours" and that it was to "[take] care of [a warrant]" for a probation violation. Doe also testified that she had an upcoming hearing for that probation violation and that she missed a meeting for her misdemeanor probation because she was more focused on tasks associated with her felony probation. The magistrate court also heard testimony that Doe was not able to be referred to a protective parenting class because it required five weeks of sobriety--a benchmark Doe had not met. Doe testified that she did not drug test as required. Finally, the magistrate court heard testimony that--during the time the children had been in the custody of the Department--Doe amassed approximately seven criminal charges, was on probation, and had two charges for controlled substances.

Next, Doe argues that the magistrate court erred in finding that she never established a safe and stable home and that she never demonstrated the ability to meet the financial needs of her children. Doe points to her relative's testimony that, while in the relative's care, B.H. "was always smiling." Further, Doe argues that she partially relies on her parents for her financial needs and points to her father's testimony that he is "financially okay" and has a "house that is adequate." However, while Doe testified that she had a couple of job interviews and was planning on a few others as well, at the time of trial, she was not employed and had not been employed since before

6

E.H. was born.[3] She testified that, other than "being incarcerated and being homeless," she had been living with her family which is where she was living at the time of trial. The magistrate court also heard testimony that a search warrant was executed on the relative's home--where E.H. and B.H. lived--which yielded marijuana, fentanyl, methamphetamine, and drug paraphernalia. While Doe alluded to an intention to move out of the home and into an RV, this plan for the future did not negate the unsafe conditions in the home and her inability to financially support the children during the life of the cases.

Finally, Doe argues that the magistrate court erred in finding that she did not engage in regular visitation with her children and did not attend their service appointments. Doe claims that she attempted to reach out to the Department to facilitate visitations, but the Department frustrated those efforts. She also points to her mother's trial testimony that Doe had visitation with the children. However, Doe acknowledged that she was incarcerated for approximately twelve out of the thirty months the children were in the custody of the Department. The magistrate court heard testimony that, even when Doe had been notified and was not incarcerated, she did not regularly attend medical or other service appointments for the children.

Each of the challenged findings of the magistrate court are supported by substantial and competent evidence. Doe has failed to meet her burden to show that the magistrate court lacked substantial and competent evidence in each of the challenged findings.

### 2. Best interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe*

---

[3] While Doe indicated that she had been a stay-at-home mom since E.H. was born, she also indicated the children's father was not an available parent.

*(2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe argues that the magistrate court made several unsupported findings in its analysis of whether termination is in the best interests of the children. First, she argues that the magistrate court erred in finding that she was unstable. As stated above, the magistrate court heard testimony that Doe's recent living circumstances consisted of living with relatives, being incarcerated, and being homeless. The magistrate court also heard testimony that Doe had amassed seven new criminal charges during the pendency of the case and was on probation at the time of trial. Doe testified that she had recently been incarcerated for forty-eight hours for missing a meeting for her misdemeanor probation.

Next, Doe argues that the magistrate court erred in finding that she did not have a safe home for the children. Doe testified that, when she was not homeless or incarcerated, she lived with relatives. However, this was the home where law enforcement found marijuana, fentanyl, methamphetamine, and drug paraphernalia. The relative at the home was cited for possession of marijuana. Further, the magistrate court heard evidence that there was a "domestic violence incident" in the relative's home when B.H. and E.H. were present.

Doe further argues that the magistrate court erred in finding that it is unclear how she would meet the financial needs of the children. Again, Doe testified that she was not employed at the time of trial and had not been employed since before the birth of E.H.

Doe also argues the magistrate court erred in finding that she continued to struggle with addiction and mental health issues. Doe testified that she relapsed approximately forty-five days prior to trial, had increased levels of anxiety, and suffered from depression. Doe also testified that she had met with a psychiatrist once to address these mental health issues.

Finally, Doe argues the magistrate court erred in finding that she never demonstrated enhanced parenting skills over the course of a prolonged child protection case, where services were implemented to assist her to stabilize and reunify with the children. The magistrate court heard testimony that Doe failed to appear for or cancelled appointments with her case manager, was

unable to enroll in parenting classes due to her lack of sobriety, had recently relapsed, and was incarcerated for approximately twelve out of the thirty months during the pendency of the case.

Each of the challenged findings of the magistrate court are supported by substantial and competent evidence. Doe has failed to meet her burden to show that the magistrate court did not have substantial and competent evidence to support its findings.

**B.      E.H.**

Doe challenges each of the same findings regarding E.H. as she challenges regarding B.H. However, in addition, Doe also argues that the magistrate court's finding--that she neglected E.H. by failing to comply with the court's orders or case plan within the time standards required--is not supported by substantial and competent evidence. Further, Doe challenges the magistrate court's finding that E.H. had been in the Department's custody for approximately twenty months. However, Doe only states that she "challenges" these findings but fails to provide argument or citation to the record to support these challenges. We will not comb the record on appeal for error. *Dawson v. Cheyovich Fam. Tr.*, 149 Idaho 375, 383, 234 P.3d 699, 707 (2010). The Idaho Supreme Court stated: "We will not consider issues that lack 'citations to the record, citations of applicable authority, or comprehensible argument.'" *Kelly v. Kelly*, 171 Idaho 27, 45, 518 P.3d 326, 344 (2022) (quoting *Bach v. Bagley*, 148 Idaho 784, 791, 229 P.3d 1146, 1153 (2010)); *see also Owen v. Smith*, 168 Idaho 633, 646, 485 P.3d 129, 142 (2021) ("We will not consider the merits of the Owens' claims because they consist of conclusory statements that lack citations to the record."). It is not the role of this Court to search the record on appeal for citation or argument. *See Dickenson v. Benewah Cnty. Sheriff*, 172 Idaho 144, 150, 530 P.3d 691, 697 (2023). For these reasons, the challenges to these findings are waived.

## IV.

## CONCLUSION

Doe has failed to show that the magistrate court lacked substantial and competent evidence to find she neglected B.H. and E.H. and that termination of Doe's parental rights is in the best interests of B.H. and E.H. Therefore, the magistrate court's judgments terminating Doe's parental rights are affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.

9